UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Helen C. Devlin** <br><br> Plaintiff <br><br> v. <br><br> **Law Offices Howard Lee Schiff, P.C.** <br><br> Defendant | Civil Action No. 11-11902-PBS <br><br><br> **Opposition to Motion to Dismiss** |

### Introduction

Plaintiff Helen C. Devlin's claims against the defendant debt collector Law Offices Howard Lee Schiff, P.C. for violation of the Fair Debt Collection Practices Act and Mass. Gen. Laws ch. 93A should not be dismissed for three reasons: because Devlin had already paid off the account Schiff was attempting to collect on, making Schiff's assertions of indebtedness false and unlawful; because Schiff illegally inflated the purported balance due during the course of attempting to collect it; and because Schiff continued collecting on the account after Devlin disputed it and invoked her statutory right under the FDCPA to have the debt validated.

Furthermore, despite Schiff's claims to the contrary, the one-year statute of limitations under the FDCPA does not bar Devlin's claims because Schiff's serial, illegal actions constitute a "continuing violation" that tolls the limitations period; because some of Schiff's actions did indeed occur within the one-year limitations period; and because all Schiff's actions occurred within the four-year statute of limitations under ch. 93A. Devlin's detailed allegations and the

1

supporting documentation attached to her amended complaint show that her claims rise above the plausibility standard for a motion to dismiss.

## I. Allegations of the Complaint

Plaintiff Helen C. Devlin ("Devlin"), a retired woman, obtained a Sears credit card issued by Citibank. (First Amended Complaint ¶ 8) (hereinafter "FAC").  In February 2003, she had entered a debt management program with Consumer Credit Counseling Service of Southern New England ("CCCS"). At the time she entered the program, she owed Sears a balance of $1,181.69. (FAC ¶ 10.) Through CCCS, Devlin made a payment plan with Sears under which she agreed to pay $26.00 per month. She continued to make the agreed-upon payments until June 2006. The parties then agreed to increase her payment to $36.00 per month.  She continued to make the increased payment until March 2008, when she had paid off the remaining balance owed to Sears. (FAC ¶ 11.) As of March 2008, Devlin had paid Sears a total of $1,484.59. (FAC ¶ 11.) On or around June 26, 2009, Midland Funding, LLC ("Midland") purportedly purchased the debt originally owed to Sears (the "account"). (FAC ¶ 12.)

Defendant Law Offices Howard Lee Schiff, P.C. ("Schiff"), a debt collector and law firm, then began collecting on the account. (FAC ¶ 13.) On or around January 20, 2010, Schiff sent Devlin a collection letter claiming that she owed Midland a balance of $1,974.57. (FAC ¶ 15 and Ex. A.) Because this letter was an "initial communication" with Devlin, it also contained the notice of validation rights required by 15 U.S.C. § 1692g(a). On February 12, 2010, Devlin responded via certified mail to Schiff's initial letter. In her response, Devlin disputed Schiff's collection letter and requested validation of the account. As grounds for her dispute, Devlin stated that she had already paid off the account, stating "At that time [in March 2008] the

balance due Sears was paid in full a total paid of $1,484.59 a sum well over the original debt of $1,181.69." (FAC ¶ 18 and Ex. B.)

Schiff never provided Devlin with validation of the account. (FAC ¶ 19.) Instead, on March 26, 2010, Schiff instead sent a dunning letter to Devlin claiming that the account balance was $1,974.57. (FAC and Ex. C.) On June 4, 2010, Schiff sent Devlin another dunning letter. This time, however, Schiff claimed that the account balance was now $2,439.38. Schiff provided no explanation as to why the account had increased by $464.81 in less than three months. (FAC ¶ 21 and Ex. D.)

On June 27, 2010, Schiff, on behalf of Midland, sued Devlin asserting that she owed $1,974.57 plus interest and court costs. The lawsuit was filed with the Lawrence District Court as civil action no. 201018CV001144. (FAC ¶ 22.) On September 11, 2010, Schiff sent Devlin another collection notice, this time claiming that the account balance was $2,503.64. (FAC ¶ 23 and Ex. E.) Somehow, within less than three months, Schiff had inflated the balance by an astounding $529.07, or over 26%.

In fact, Schiff would later contradict the account balances as claimed in the June 4, 2010, and September 11, 2010, dunning letters. Then, in another letter dated March 5, 2011, Schiff claimed that the balance on the account was still only of $1,974.57—the amount originally claimed due in Schiff's March 26, 2010 dunning letter. (FAC ¶ 24 and Ex. F.)

On four separate occasions, Devlin informed Schiff's representatives that she had already paid the account in full.  First, on February 12, 2010, when Devlin sent Schiff the validation letter; second, on November 17, 2010, when Devlin filed her Answer to the Complaint; third, on January 5, 2011, when Devlin provided a payment history to the attorney representing Schiff at

the case management conference; and fourth, on May 4, 2011, when Devlin again provided a payment history to the attorney representing Schiff at the first pre-trial conference. (FAC ¶ 25 and Ex. G.)

Even after Devlin presented Schiff with proof that she had paid the account, Schiff nevertheless persisted with the groundless lawsuit against her. (FAC ¶ 26.) Devlin ultimately retained counsel to assist her (FAC ¶ 27), and soon thereafter Schiff dismissed the suit with prejudice. (FAC ¶ 28.) Schiff knew all along that Devlin had paid the account, but continued with the lawsuit in the hope of obtaining a judgment against a retired woman unfamiliar with the legal system. (FAC ¶ 29.)

## II. Standard for Dismissal Under Rules 12(b)(6) and 12(c)

Under a motion to dismiss pursuant to Rule 12(b)(6), as with Rule 12(c), the short and plain statement in the complaint should "possess enough heft to show that the pleader is required is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). When plaintiffs have "nudged their claims across the line from conceivable to plausible," the complaint withstands dismissal. *Id.* at 547. A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'" *Santiago v. Bloise*, 741 F. Supp. 2d 357, 360 (D. Mass. 2010) (quoting *Perez–Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008)). Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage," the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and "draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

In the First Circuit, "[t]he court's assessment of the pleadings is context-specific, requiring the reviewing court to draw on its own judicial expertise and common sense." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quotation marks omitted). The motion is not a procedure for resolving a contest between the parties about the facts or substantive merits of the plaintiff's case. *Killela v. Hall*, 84 F. Supp. 2d 204 (D. Mass. 2000) (Ponsor, J.). Accordingly, to prevail on a motion to dismiss, the defendant's alternative explanation must be "so overwhelming . . . that the [plaintiff's] claims no longer appear plausible." *Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009) (Gertner, J.).

### III. Argument: Schiff Violated the FDCPA and Chapter 93A

To prevail on a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), a plaintiff must prove that: (1) she was the object of collection activity arising out of a consumer debt; (2) the defendant is a debt collector within the meaning of the 15 U.S.C. § 1692a(6); and (3) that the defendant engaged in some act or omission prohibited by the FDCPA. *Som v. Daniels*, 573 F. Supp. 2d 349, 356 (D. Mass. 2008).

In her FAC, Devlin alleged that she incurred a "debt" within the meaning of 15 U.S.C. § 1692(a)(5), that Schiff purchased the "debt" for collection purposes, and that Schiff is a "debt collector" within the meaning of 15 U.S.C. § 1692(a)(6). Thus, Devlin has sufficiently pled the first two prongs an FDCPA claim. It is only the third prong that Schiff disputes. The question of whether a debt collector's conduct violates the FDCPA is a question of law to be determined by the Court. *See Chiang v. Verizon New England Inc.,* 595 F.3d 26, 34 (1st Cir. 2010).

Devlin alleges that Schiff violated 15 U.S.C. § 1692g(b) by continuing to pursue collection activities without first providing the requested verification; violated 15 U.S.C. § 1692e(2) by

falsely representing the character, amount and status of the debt allegedly owed to Midland; and violated 15 U.S.C. § 1692f(1) by attempting to collect an amount not permitted by law. Schiff's pattern of violations, rather than being just an isolated incident, are a continuing violation that tolls the statute of limitations for any of Devlin's claims that might otherwise be time-barred under the FDCPA's one-year statute of limitations. Furthermore, all Devlin's claims against Schiff are brought within the four-year statute of limitations under Mass. Gen. Laws ch. 93A ("Chapter 93A), violations of the FDCPA being per se violations of Chapter 93A under established law and regulation.

**A.     Schiff Refused to Provide Validation of Devlin's Account, Violating the FDCPA.**

Pursuant to 15 U.S.C. § 1692g(b), if a consumer timely notifies a debt collector that a debt is disputed, the debt collector is prohibited from continuing collection activities until it provides the consumer with validation of the debt. *See Krasnor v. Spaulding Law Offices,* 675 F. Supp. 2d 208 (D. Mass. 2009) (denying motion to dismiss where plaintiff alleged defendant failed to provide validation of debt within five days of initial communication).

Despite Devlin's timely notice to Schiff that she disputed the account, Schiff failed to provide Devlin with validation of the debt and continued to pursue collection of the account. Devlin notified Schiff on February 12, 2010, that she disputed the debt. In her February 12, 2010 letter, Devlin explained that she had entered a debt management program; that she had made payment arrangements with Sears; that she fulfilled her obligations under the payment arrangement; and that the balance due Sears was paid off as of March 2008. (FAC ¶¶ 10–11 and Ex. B.) Schiff does not and cannot dispute that it received Devlin's February 12, 2010, which she sent by certified mail. Instead, Schiff argues that Devlin's letter "does not comport" with 15

U.S.C. § 1692g. Specifically, Schiff argues that Devlin failed to dispute the debt or request validation. Schiff's argument is disingenuous as Devlin clearly stated that she paid the full amount owed to Sears. Devlin disputed the debt because she made a factual assertion contrary to Schiff's position.

Schiff further argues that Devlin failed to provide any documentation to support her belief that she had paid Sears in full. Schiff's argument is without merit. Under 15 U.S.C. § 1692g, a consumer like Devlin must need only notify the debt collector that the debt is disputed, but need not provide proof of the dispute. In fact, the FDCPA does exactly the opposite—it places the burden upon the debt collector to provide the consumer with validation, or evidence, that the debt is valid. Accordingly, Schiff violated 15 U.S.C. § 1692g(b) by continuing to pursue collection activities against Devlin without providing her with the requested validation.

**B.    The Misleading Amounts on Schiff's Collection Notices to Devlin Violated the FDCPA.**

Schiff's collection notices violated the FDCPA by falsely representing the amount character, status and amount of the debt; and by attempting to collect a debt not permitted by law. In determining whether a collection notice violates the FDCPA, courts traditionally apply the standard of the "least sophisticated consumer." *See, e.g., Martin v. Sands*, 62 F. Supp. 2d 196 (D. Mass. 1999) (citing *Clomon v. Jakson*, 988 F.2d 1314, 1318 (2d Cir. 1993)); *Sullivan v. Credit Control Services, Inc.*, 745 F. Supp. 2d 2 (D. Mass. 2010); *Waters v. Kream*, 770 F. Supp. 2d 434 (D. Mass. 2011). This is an objective standard based on "whether the least sophisticated consumer would be deceived by the collection practice." *McGuire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998).

Schiff's collection letters falsely represented the character, amount and legal status of the debt purportedly owed to Midland. Under 15 U.S.C. § 1692e(2), a debt collector is prohibited from making false representations with regard to the "character, amount or legal status of any debt." Based on Devlin's letter of February 12, 2010, Schiff knew that Devlin had paid off the account. (FAC ¶ 18 and Ex B.) Yet, on March 26, 2010, Schiff mailed Devlin a collection notice falsely claiming that the Devlin owed Midland the sum of $1,974.57. (FAC ¶ 20 and Ex. C.) Then, on June 4, 2010—less than three months later—Schiff sent Devlin a second collection notice falsely claiming that Devlin now owed Midland the increased sum of $2,439.38. (FAC ¶ 21 and Ex. D.) Schiff's June 4, 2010, letter did not provide any explanation as to why the amount claimed to be due to Midland had increased by $464.81 in such a short time. Standing alone, this increase in the amount owed was false and misleading, entirely without basis or explanation. On March 5, 2011, however, Schiff then claimed that Devlin owed Midland the originally claimed balance of $1,974.57. (FAC ¶ 24 and Ex. F.) The contradictory information supplied by Schiff is, on its face, false and misleading. The fact that Schiff knew that Devlin had paid off the account entirely only makes Schiff's false representations more egregious.

Schiff violated the FDCPA by attempting to collect a debt not permitted by law. Under 15 U.S.C. § 1692f(1), a debt collector is prohibited from attempting to collect any amount (including, interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

In this case, Schiff attempted to collect from Devlin a debt that she had already paid. More importantly, Schiff had full knowledge that Devlin had paid the debt it was seeking to collect. On no less than four separate occasions, Devlin informed Schiff that she had paid the

debt: in her request for validation; in her answer to the Complaint; in the case management conference; and in the first pre-trial conference. Yet, Schiff continued to attempt to collect from Devlin a debt that she did not owe.

**C.    Schiff's Conduct is a "Continuing Violation" Tolling the Statute of Limitations Under the FDCPA.**

Schiff's collection activity against Devlin constitutes a pattern of serial violations sufficient to establish a continuing violation of Devlin's rights under the FDCPA. Under the continuing violation doctrine, a plaintiff may link a number of wrongful acts emanating from the same animus, even though each act constitutes a separate wrong. *See Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 7 (1st Cir. 2005); *Provencher v. CVS Pharmacy*, 145 F.3d 5, 13 (1st Cir. 1998); *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir. 1990). When viewed as a continuing violation, each communication brings a fresh statute of limitations period for the claim. *See Nutter v. Messerli & Kramer*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007). If the plaintiff can establish serial violations and also show that at least one act in the series occurred within the limitations period, then the suit may be considered timely as to all the acts. *See Lawton v. State Mut. Life Assur. Co.*, 101 F.3d 218, 221-22 (1st Cir. 1996); *Kayssaye v. Bryant Coll.,* 999 F.2d 603, 606 (1st Cir. 1993).

Here, Schiff sent Devlin a series of false and misleading letters attempting to collect a debt not permitted by law. (FAC ¶ 23–24.) Schiff then filed a collection action, and continued to prosecute that action, even after it knew that Devlin had paid off the debt. (FAC ¶ 25.) Finally, on March 5, 2011, Schiff sent Devlin a letter offering to settle the debt, which it knew Devlin did not owe. Viewed in their totality, Schiff's collection activities against Devlin constitute a pattern

9

of serial violations sufficient to establish a continuing violation of her rights under the FDCPA. Additionally, Schiff's letter to Devlin offering to settle the account was sent on March 5, 2011, well within the one-year statute of limitations. 15 U.S.C. §1692k. Consequently, the Court should consider all of Devlin's allegations against Schiff as timely.

D.  **Even if Some of Devlin's Claims were Time-Barred, Some Would Not Be.**

Even if the Court were to reject Devlin's theory of a continuing violation (which it should not), the statute of limitations would not bar all of Devlin's claims against Schiff. As stated above, on March 5, 2011, Defendant sent Devlin a proposed settlement offer, in which Defendant claimed that the balance owed to Midland was $1,974.57. (FAC ¶ 24 and Ex. F.) This communication not only misrepresented the character, amount and status of the debt, but was also an attempt by Schiff to collect an amount not permitted by law. As such, this communication alone gives rise to claims under 15 U.S.C. §§ 1692e(2) and 1692(f).

Additionally, Devlin amended her complaint to include claims against Schiff pursuant to Chapter 93A. Violations of the FDCPA are per se violations of Chapter 93A. "Violations of the FDCPA are per se violations of Chapter 93A." *Harrington v. CACV of Colo., LLC*, 508 F. Supp. 2d 128, 137 (D. Mass. 2007) (Gertner, J.) (citing *Martin v. Sands*, 62 F. Supp. 2d 196, 201 (D. Mass. 1999) (Tauro, J.)); *see also* 940 Code Mass. Regs. 3.16(4) ("[a]n act or practice is a violation of M.G.L. c.93A, s. 2 if . . . It violates . . . Federal consumer protection statutes . . . ."). Unlike the FDCPA, which has a one-year statute of limitations, Chapter 93A provides a four-year statute of limitations. Mass. Gen. Laws ch. 260, § 5A.

Thus, Schiff's violations of the FDCPA give rise to Devlin's claim under Chapter 93A even if its conduct were beyond the FDCPA's one-year statute of limitations. "It is important to

note that, while the [FDCPA's] statute of limitations is only one year, a violation of the act is also a violation of G.L. c. 93A, and the latter has a four-year statute of limitations." 48 Mass. Prac. Collection Law § 2:24 (3d ed.); *see also Harrington*, 508 F. Supp. 2d at 141 ("Defendant's alleged conduct is actionable under Mass. Gen. Laws Ch. 93A for violations of 940 C.M.R. § 3.16(4) (violating the FDCPA).").

### IV. Conclusion

Devlin requests that the Court DENY Schiff's motion to dismiss. Her detailed allegations, exhibits, and the law cited above shows that she has pleaded a more-than-plausible case that Schiff's violated both the FDCPA and Chapter 93A.

Respectfully submitted,

/s/ *Josef C. Culik*
Josef C. Culik (BBO #672665)
CULIK LAW PC
18 Commerce Way, Suite 2850
Woburn, MA 01801
Tel  (800) 962-9570
Fax  (781) 780-2515
jculik@culiklaw.com

Attorney for Plaintiff Helen C. Devlin

March 14, 2012

**Certificate of Service**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 14, 2012.

                              /s/ *Josef C. Culik*
                              Josef C. Culik