UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HELEN C. DEVLIN,,                )
                                 )
          Plaintiff,             )
     v.                          )          CIVIL ACTION
                                 )          NO. 11-11902-JGD
LAW OFFICES                      )
HOWARD LEE SCHIFF, P.C.,         )
                                 )
          Defendant.             )

## MEMORANDUM OF DECISION AND ORDER ON
## MOTION FOR JUDGMENT ON THE PLEADINGS OR TO DISMISS

September 25, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of the efforts undertaken by the defendant, Law Offices

Howard Lee Schiff, P.C. ("Schiff"), on behalf of its client to collect a debt which the

plaintiff, Helen C. Devlin ("Devlin"), contends was paid in full before the collection

efforts were initiated.  Devlin, in her First Amended Complaint (Docket No. 12) ("FAC"),

alleges that Schiff's collection efforts violated the Fair Debt Collection Practices Act, 15

U.S.C. §§ 1692, *et seq.* ("FDCPA"), and constituted unfair and deceptive acts and

practices in violation of Mass. Gen. Laws ch. 93A.  This matter is presently before the

court on the defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c) and to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Docket No. 13).  Pursuant to

this motion, Schiff seeks the dismissal of all claims on the grounds that the law firm did

nothing improper and that, in any event, the claims are time-barred.  For the reasons

detailed herein, the defendant's motion is DENIED.

## II.  STATEMENT OF FACTS

In ruling on a motion to dismiss, the court must accept as true all well-pleaded

facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v.

Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  "A motion for judgment on the

pleadings is treated much like a Rule 12(b)(6) motion to dismiss" since the Rule 12(c)

motion also "calls for an assessment of the merits of the case at an embryonic stage[.]"

Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (internal quotations

and citation omitted).  Thus, to survive a Rule 12(b)(6) and 12(c) motion, "a complaint

must contain factual allegations that 'raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true[.]'"  Id. (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

The court may also consider "documents the authenticity of which are not disputed by the

parties," "documents central to plaintiffs' claim" and "documents sufficiently referred to

in the complaint."  Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  Applying this

standard to the instant case, the relevant facts are as follows.

Devlin is a retired woman who lives in Methuen, Massachusetts.  (FAC ¶ 1).  She

obtained a Sears credit card issued by Citibank, which she used for personal and house-

hold purposes.  (FAC ¶ 9).  By February 2003, Devlin owed Sears $1,181.69 on the credit

card, and she entered a debt management program with Consumer Credit Counseling

Service of Southern New England ("CCCS").  (FAC ¶ 10).  Through CCCS, Devlin

entered into a payment plan with Sears pursuant to which she paid $26.00 per month

through June 2006, and then $36.00 per month through March 2008.  (FAC ¶ 10-11).  By

March 2008, the debt to Sears was paid in full, and Devlin had paid a total of approxi-

mately $1,484.59, which was $302.90 more than her original balance.  (FAC ¶ 11).

     Midland Funding, LLC ("Midland") contends that it purchased the debt originally

owed to Sears (the "Account") on or around June 26, 2009.  (FAC ¶ 12).  Midland hired

Schiff to collect the debt, and it is undisputed that the law firm qualifies as a debt

collector under the FDCPA.  (FAC ¶¶ 13-14).  Since the collection efforts are at issue in

this litigation, they will be explained in some detail.

     By letter dated January 20, 2010, Schiff notified Devlin that she owed Citibank the

amount of $1,974.57 and "suggested" that she send a check or money order for the

balance due.  (FAC Ex. A).  No explanation of the amount was provided.  (Id.).  The

letter also contained a "Validation Notice," as required by 15 U.S.C. § 1692g(a), which

provided as follows:

> If you do not dispute the validity of the debt, or any portion thereof,
> within 30 days of the receipt of this letter, the debt collector will
> assume it is valid.  **If you dispute the validity of this debt or any
> portion thereof in writing within 30 days of receipt of this letter,
> we will obtain and mail you verification of the debt or a copy of a
> judgment against you.**  At your request in writing within 30 days of
> receipt of this letter, we will provide you with the name and address
> of the original creditor, if different from the current creditor.

(Id., emphasis added).

Devlin responded by certified mail on February 12, 2012.  (FAC Ex. B).  In her letter, she explained that the debt arose from her Sears account, that in February 2003 she had entered into a debt management program with CCCS and that she had made payments in specified amounts on the debt through March 2008.  (Id.).  She further wrote that as of March 2008, "the balance due Sears **was paid in full** a total paid of $1,484.59 a sum well over the original debt of $1,181.69."  (Id., emphasis added).  She concluded by saying "I have the monthly statements from CCCS and Money Management showing the monthly payments being sent to Sears Roebuck and Co."  (Id.).

It is undisputed that if a consumer timely notifies a debt collector that a debt is disputed, the debt collector must provide the consumer with validation of the debt before it can continue collection activities under 15 U.S.C. § 1692g(b) (if the consumer notifies the debt collector in writing within 30 days "that the debt, or any portion thereof, is disputed, . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judg-ment[.]").  Schiff contends, and Devlin denies, that Devlin's letter was insufficient to trigger the need to provide verification.  In any event, it is undisputed for present purposes that Schiff did not provide verification of the debt and continued the collection activities.  (FAC ¶¶ 19-20).

By letter dated March 26, 2010, Schiff again notified Devlin that the "current balance due" was $1,974.57, and that it was "authorized to offer you a settlement of 75% of the balance due" if payment was received by April 23, 2010.  (FAC Ex. C).  On June

4

4, 2010, Schiff sent Devlin another letter, this time listing the "current balance due" at $2,439.38, and informing Devlin that it was "authorized to offer you a lump sum settlement of 60% of the balance due" if paid by June 25, 2010, or 70% of the balance due if paid in three monthly installments through August 26, 2010.  (FAC Ex. D).  No explanation for the changed "balance due" was provided.  (Id.; FAC ¶ 21).

On July 27, 2010, Schiff, on behalf of Midland, filed a lawsuit against Devlin in the Lawrence District Court (the "Lawrence Action"), claiming that Devlin owed Midland $1,974.57, plus interest and court costs.  (FAC ¶ 22).  In her answer dated November 17, 2010, Devlin took the position that the account had been paid in full. (FAC ¶ 25).

Meanwhile, several months after filing suit, on September 11, 2010, Schiff sent Devlin another collection letter, notifying her that the "current balance due" was $2,503.64 and informing Devlin that it was "authorized to offer you a lump sum settlement of 60% of the balance due" if paid by September 30, 2010, or 75% of the balance due if paid in three monthly installments through November 29, 2010.  (FAC Ex. E).  Again there was no explanation of the balance due amount, nor was there any mention of the pending lawsuit.  (Id.).  Rather, this letter was exactly in the same form as the earlier communications from Schiff.  (Compare FAC Exs. C, D & E).  In Schiff's next letter to Devlin, dated March 5, 2011, the "current balance due" went down again to $1,974.57 without explanation, and Schiff again reported that it was "authorized to offer you a lump sum settlement of 60% of the balance due" if paid by March 22, 2011, or

70% of the balance due if paid by April 5, 2011.  (FAC Ex. F).  There was no mention of any lawsuit.  (Id.).

The lawsuit was apparently proceeding in a parallel path to the collection letters. Thus, a case management conference was held on January 5, 2011, at which time Devlin provided a payment history to Schiff's attorney purporting to establish that the account had been paid in full.  (FAC ¶ 25).  Nevertheless, as detailed above, a collection letter was sent on March 5, 2011.  (FAC Ex. F).  The first pre-trial conference in the Lawrence Action was held on May 4, 2011, at which time Devlin again provided a payment history to the collection attorney.  (FAC ¶ 25; Ex. G).  The litigation continued and Devlin retained counsel.  (FAC ¶¶ 25-27).   On or about September 9, 2011, the parties stipulated to a dismissal with prejudice, without costs and fees, which was filed with the court in October 2011.  (Def. Ex. F1 & F2).

In the interim, Devlin commenced the instant action on October 27, 2011, and filed an amended complaint on February 16, 2012.  (Docket No. 12).  Counsel for Devlin sent Schiff a demand letter pursuant to Mass. Gen. Laws ch. 93A on November 18, 2011. (FAC Ex. H).  Schiff responded by letter dated December 19, 2011.  (FAC Ex. I).  In Count I of the First Amended Complaint, Devlin alleges that Schiff violated FDCPA § 1692g(b) "by failing to cease collection efforts after Devlin's request for validation of the Account, and by failing to provide validation of the Account."  (FAC ¶ 35).  She also alleges that Schiff violated FDCPA §§ 1692f(1) and 1692e(2) by misrepresenting that a debt was due, since it had been paid in full, and by deceptively changing the amounts it

claimed were due by adding amounts that were not authorized by law or agreement.

(FAC ¶¶ 36-37).  In Count II of her complaint, Devlin alleges that Schiff violated Mass.

Gen. Laws ch. 93A.  Schiff has moved to dismiss the complaint, alleging that it did

nothing wrong in connection with its collection efforts, that Devlin has failed to state a

claim under ch. 93A, and that Devlin's claims are barred by the one year statute of

limitations in the FDCPA.  (Docket No. 14).

Additional facts will be provided below where appropriate.

### III.   ANALYSIS

**A.**   **Motion to Dismiss Standard of Review**

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings.

Thus, when confronted with a motion to dismiss, the court accepts as true all well-

pleaded facts and draws all reasonable inferences in favor of the non-moving party.

Cooperman, 171 F.3d at 46.  Dismissal is only appropriate if the pleadings, so viewed,

fail to support "'a plausible entitlement to relief.'"  Rodríguez-Ortiz v. Margo Caribe,

Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559, 127 S. Ct. at

1967 (2007)).  Similarly, the legal standard for evaluating a motion for judgment on the

pleadings pursuant to Fed. R. Civ. P. 12(c) is essentially the same as the standard for

evaluating a 12(b)(6) motion except that the 12(c) motion "implicates the pleadings as a

whole."  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006).  It is

undisputed that the exhibits attached to the complaint are properly considered part of the

pleadings for Rule 12 purposes.  See Fed. R. Civ. P. 10(c); In re Lane, 937 F.2d 694, 696 (1st Cir. 1991).

Two underlying principles must guide the court's assessment as to the adequacy of the pleadings to support a claim for relief.  Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009).  "'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' Such conclusory statements are 'not entitled to the assumption of truth.'"  Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)) (internal citations omitted).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. (quoting Ashcroft, 129 S. Ct. at 1950).  "This second principle recognizes that the court's assessment of the pleadings is 'context-specific,' requiring 'the reviewing court to draw on its judicial experience and common sense.'  '[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.'"  Id. (quoting Ashcroft, 129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).  Applying these principles to the instant case, the defendant's motion must be denied.

### B.   Alleged Violations of the FDCPA

Schiff contends that Devlin has failed to allege any violations of the FDCPA as its conduct was not in violation of the Act as a matter of law.  The parties agree that the

issue whether a debt collector's conduct violates the FDCPA is a question of law to be determined by the Court.  See Chiang v. Verizon New England Inc., 595 F.3d 26, 34 (1st Cir. 2010).  This court finds that Devlin has stated a claim.

"In order to prevail on an FDCPA claim, a plaintiff must prove that (1) [she] was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA."  Krasnor v. Spaulding Law Office, 675 F. Supp. 2d 208, 211 (D. Mass. 2009).  There is no question that Devlin has satisfied the first two prongs – it is only the third element that is in dispute.  In evaluating whether the debt collector engaged in wrongful conduct, its actions are viewed through the eyes of the "least sophisticated consumer" or the "unsophisticated consumer."  Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994).  The "unsophisticated consumer standard protects the consumer who is uninformed, naive, or trusting, yet it admits an objective element of reasonableness.  The reasonableness element in turn shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letter."  Id.  "Under the generally approved standard, a 'least sophisticated consumer' is not obliged to closely parse the words of a communication in order to divine its meaning.  The reciprocal is also true: a 'least sophisticated consumer' would not be expected to do so.  The substance of the communication, read as a whole, matters more than its linguistic construction."  Waters v. Kream, 770 F. Supp. 2d 434, 437 (D. Mass. 2011).

Devlin alleges that Schiff violated 15 U.S.C. § 1692g(b) by continuing to pursue collection activities even after she had advised Schiff that the debt was disputed.  (FAC ¶ 35).  This court agrees.  Thus, 15 U.S.C. § 1692g(b) states in relevant part:

> If the consumer notifies the debt collector in writing within [30 days of receipt of the validation notice] **that the debt, or any portion thereof, is disputed**, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.**

(emphasis added).  In the instant case, after she received the validation letter of January 20, 2010, Devlin responded by letter dated February 12, 2010, notifying Schiff that, as of March 2008, "the balance due Sears was paid in full a total paid of $1,484.59 a sum well over the original debt of $1,181.69."  (FAC Ex. B).

Schiff argues that this letter does not constitute notice that the debt was disputed, or request validation.  Such an argument is totally unpersuasive.  In this letter, as well as in her subsequent communications during the Lawrence Action, Devlin made it more than clear that she believed that nothing was due on the debt — i.e., that the debt was disputed.  Whether this court applies the "least sophisticated consumer" standard, or any other standard, it is impossible to see how Schiff did not understand that Devlin was disputing its claim of monies due.  Schiff's decision to continue its collection efforts without providing verification of the debt was in violation of the FDCPA.

Schiff's argument that Devlin was obligated to provide proof of her position is equally unpersuasive. As the above-quoted statutory language makes clear, the burden was on the debt collector to provide proof of the debt to the consumer, and not vice versa. Devlin's complaint has stated a claim for violation of 15 U.S.C. § 1692g(b).

Devlin also alleges that the fact that the amount Schiff claimed was due varied from statement to statement, without explanation, constituted a violation of 15 U.S.C. § 1692e(2). (FAC ¶ 36). That provision prohibits a debt collector from making false representations regarding the "character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A). This court agrees that Devlin has stated a claim for a violation of the Act.

Schiff argues that it is entitled to add interest and costs to the amounts due, and that in filing suit it did not have to include all such amounts in its demand. However, Schiff has made no attempt to explain why the amounts allegedly owed increased in its collection letter of September 11, 2010 to $2,503.64 and then decreased in its collection letter of March 5, 2011 to $1,974.57. Debt collectors are obligated to "clearly and fairly communicate information about the amount of the debt to debtors. This includes how the total amount due was determined if the demand for payment includes add-on expenses like attorneys' fees or collection costs." Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565 (7th Cir. 2004). This court cannot find, as a matter of law, that no FDCPA violation occurred given the shifting representations of amounts due.[1] See Krasnor, 675 F. Supp.

---

[1] In light of the fact that Devlin has clearly alleged violations of the FDCPA, there is no need for this court to address whether the additional allegation that Schiff violated the FDCPA by

2d at 213 (motion to dismiss denied where "Defendant has been given sufficient information in the complaint not only to understand the specific aspects of Plaintiff's multi-faceted FDCPA claim but to respond to his allegations.").

    C.    **<u>Statute of Limitations</u>**

Schiff claims that Devlin's claims under the FDCPA are barred by 15 U.S.C. § 1692k(d), which provides that an action must be brought "within one year from the date on which the violation occurs." It is undisputed that collection letters were dated March 26, 2010, June 4, 2010 and February 12, 2010, that the Lawrence Action was commenced on June 17, 2010 and that Devlin was served with the summons and complaint on July 1, 2010. It is also undisputed that the instant complaint was filed on October 27, 2011. Nevertheless, Devlin argues that Schiff sent another misleading collection letter on March 5, 2011, within the statutory period, which can form the basis of a complaint on its own. Moreover, Devlin contends that this letter was part of a continuing violation which enables her to base her claim on all of Schiff's collection efforts.

As an initial matter, Schiff argues that the letter of March 5, 2011 was an offer to settle the litigation and thus cannot be deemed a collection letter governed by the FDCPA. This argument is without merit. The letter makes no mention of any litigation, and is in the same form as all the earlier correspondence. It is not an offer to settle the

---

attempting to collect a debt that was not due at all, states a claim.

litigation, and does not indicate that any payment would result in the dismissal of the lawsuit.  Thus, the letter is a collection letter within the purview of the FDCPA.

"District courts are not of a single view as to how the one-year statute of limitations for the FDCPA applies to a course of conduct, some of which occurred within the limitations period and some of which preceded it."  Arvie v. Dodeka, LLC, Civ. Action No. H-09-1076, 2010 WL 4312907, at *7 (S.D. Tex. Oct. 25, 2010), and cases cited (quotation and punctuation omitted).  While some courts hold that a new communication concerning an old claim does not start the limitations period anew, id., other courts have applied a "continuing violation doctrine" when "the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts."  Id. at *8 (quotation and citation omitted).  The latter cases "hold that, in cases involving a pattern of conduct (as opposed to unrelated discrete acts) an FDCPA claim is timely under the continuing violation doctrine as long as the plaintiff files the claim within one year of the last act that constitutes a violation."  Camacho v. Nat'l Credit Adjustment Agency, CV-06-5040-FVS, 2007 WL 760416, at *2 (E.D. Wash. Mar. 8, 2007) (citing Joseph v. J.J. MacIntyre Cos., 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003)).  Other courts also have ruled that even absent a pattern of wrongdoing, each separate collection letter may constitute a separate violation of the FDCPA and commence a new statute of limitations period.  See Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360 (S.D. Fla 2000).  See also Simard v. LVNV Finding, LLC, No. 10-11009-NMG, 2011 WL 4543956, at *5 (D. Mass. Sept. 9, 2011) ("Under a continuing violation theory, each new communication

13

from the debt collector is viewed as a separate violation and a new statute of limitations period accrues.  However, if the new communication concerns an old claim, the new communication is subject to the statute of limitations period for the old claim.")

In the instant case, suit may be timely either because the defendant engaged in a pattern of wrongful conduct under a continuing violation theory or because the March 2011 letter was a discrete act and was within the statutory period.  Under such circumstances, this court is not prepared to conclude that the FDCPA claim is untimely at the motion to dismiss stage.

**E.     93A Violation**

Finally, the defendant claims that Devlin has failed to assert a claim under Mass. Gen. Laws ch. 93A, and that her demand letter under the statute was insufficient.  Again, these arguments are not persuasive.  As an initial matter, violations of the FDCPA are per se violations of ch. 93A.  See Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 359 (D. Mass. 2008).  Therefore, and for the reasons stated above, Devlin has stated a claim under ch. 93A.  Moreover, since there is a four year statute of limitations for ch. 93A claims, there is no question that the claims are timely.  See Harrington v. CACV of Colorado, LLC, 508 F. Supp. 2d 128, 141 (D. Mass. 2007).  The demand letter was sufficient to comply with the statutory requirements, since Devlin "define[d] the injury suffered and the relief demanded in a manner that provides the prospective defendant with an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied and enable[d] him to make a reasonable tender of

14

settlement." <u>Spring v. Geriatric Auth. of Holyoke</u>, 394 Mass. 274, 288, 475 N.E.2d 727, 736 (1985) (internal quotation omitted).  The motion to dismiss this claim must be denied.

## IV.  <u>ORDER</u>

For all the reasons detailed herein, defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 13) is DENIED.

        / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge